UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSHUA M. DUPAGE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 19-cv-1021- JES-JEH |
| v. ) | |
| ) | |
| OFFICER BRETT BUTLER, and the ) | |
| CITY OF PEKIN, ILLINOIS, ) | |
| ) | |
| Defendants. ) | |

**ORDER AND OPINION**

This matter is now before the Court on the Motion of Defendants Brett Butler ("Butler") and the City of Pekin ("City") to Partially Dismiss and Partially Strike Plaintiff's Amended Complaint (Doc. 92). Plaintiff, currently in custody and proceeding pro se, has filed a Response (Doc. 95). Defendants move to dismiss Counts I, II, IV, V, VI and VII for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and 12(c). Defendants move to strike the Argument and Letter portions of the amended complaint pursuant to Rule 12(f)(2). For the reasons set forth below, Defendants' Motion (Doc. 92) is GRANTED in part and DENIED in part.

**BACKGROUND**

On February 23, 2023, the Court issued an Order on Defendants' Motion to Dismiss Plaintiff's initial complaint. (Doc. 82). The Court dismissed Count I as insufficient where Plaintiff attempted to assert a Fourth Amendment claim alleging only that Defendant Officer Butler ordered him to "stop walking" and detained and searched him without probable cause. The Court also dismissed Count III for Plaintiff inadequately pleading a *Monell* [1] claim against

---

[1] *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) (finding potential liability by municipality under § 1983 for constitutional injury resulting from the municipality's policy or practice).

the City; that Defendant Butler acted pursuant to a City policy of harassing citizens and violating their protected rights. Defendants did not challenge the Count II allegation of excessive use of force. Counts I and III were dismissed without prejudice and Plaintiff was given leave to amend.

On March 13, 2023, Plaintiff filed an amended complaint identifying Butler and the City as Defendants. In the section meant to identify the parties, Plaintiff listed "Pekin Police Department" but not the City. (Doc. 89 at 1). In Count IV Plaintiff names both the Pekin Police Department and the City. The Pekin Police Department is not a suable entity under § 1983. *See Averhart v. City of Chicago*, 114 F. App'x 246, 247 (7th Cir. 2004) (a city police department is not a separate, suable entity); *Jones v. Bowman,* 694 F. Supp. 538, 544 (N.D. Ind. 1988) ("A city's police department is merely a vehicle through with the government fulfills its policy functions and is not a proper party defendant). As a result, the Court will direct the Clerk to dismiss the Pekin Police Department as a Defendant. This case proceeds only against Butler and the City.

In Count I, Plaintiff reasserts his claim that he was detained and searched without probable cause in violation of the Fourth Amendment, the Illinois Constitution, and unspecified state statute. In Count II, Plaintiff alleges that, while arresting him, Defendant Butler unlawfully used the LEADS[2] system to check for outstanding warrants. In Count III, Plaintiff alleges that on February 9, 2018, Defendant Butler used excessive force while arresting him after discovering Plaintiff had an outstanding traffic warrant. Defendants' Motion to Dismiss is not directed at Count III.

---

[2] The Law Enforcement Agencies Data System ("LEADS"), is a "statewide, computerized telecommunications system designed to provide services, information, and capabilities to the law enforcement and criminal justice community in the State of Illinois." LEADS in IL – Search (bing.com) (last accessed May 16, 2023).

In Count IV Plaintiff references "Pekin Police Dept. – City of Pekin," reasserting a *Monell* claim. (Doc. 89 at 4). Plaintiff pleads that the City had a policy, custom, or practice of illegal seizures directed against others and also, specifically against him. Plaintiff asserts that "several times" in 2017 and 2018, he was illegally stopped and searched by Defendant Butler and other unknown officers. He also asserts an unconstitutional City policy or practice pursuant to which officers called him a scumbag, and low-life drug dealer; told Plaintiff's fiancée that he had impregnated another woman; drove passed Plaintiff's apartment with their spotlights on and followed Plaintiff "all the way across town to [his] carport; blocking his car and turning on a strobe light, waking up his neighbors." Plaintiff claims that this policy of harassment arose from the City's failure to train, supervise, and discipline Officer Butler and "other unknown City of Pekin Police officers." *Id*. Plaintiff also asserts that this policy of harassment was also directed at his fiancée, his fiancée's sister, his mother, and a friend.

Count V is titled "Pattern and Practice." There, Plaintiff alleges that unlawful searches and seizures are commonplace in Pekin, Illinois. He also asserts that the referenced February 9, 2019 arrest by Defendant Butler, Pekin Officer Burris, and an unknown Creve Coeur Police Officer, was the result of an impermissibly prolonged stop based on an investigation alert.[3] (Doc. 89 at 5) (citing *People v. Bass*, 182 N.E.3d 714, 716–17 (Ill. 2021); *People v. Aaron Smith*, No.

---

[3] "'Investigative alerts,' formerly known in Illinois as 'stop orders', are entries in a police database of individuals that police are attempting to locate. Running a name check through this database will reveal any investigative alerts issued for that person by the department, including other information such as the facts relied on for issuing the alert." *People v. Bass*, 182 N.E.3d 714, 716–17 (Ill. 2021).

3

19-0691 (Jul. 18, 2022 1st Dist. 1st Div.). As a result, this Count appears to replead the allegations of Counts I and IV with more detail.

Count VI is titled "Deprivation of the Right Under Color of Law." Here, Plaintiff merely asserts that when Officer Butler violated Plaintiff's Fourth Amendment rights on February 9, 2018, he did so under color of law. In Count VII, Plaintiff alleges that on February 9, 2018, Officer Butler conspired with other unnamed Pekin police officers to violate his Fourth Amendment rights against unlawful search and seizure. The remainder of the amended complaint consists of an "Argument" where Plaintiff recounts detailed factual information largely missing from the body of the complaint. (Doc. 89 at 8-12). Plaintiff also attaches a letter to the Court requesting assistance in the form of a telephone conference with the Court, assurance that he has correctly amended his complaint, and a request for the appointment of counsel. (Doc. 89 at 13).

Defendants move to dismiss Counts I, II, IV, V, VI, and VII of the Amended Complaint with prejudice. Defendants also request that the "Argument" section of the Amended Complaint be stricken, under Rule 12(f)(2), asserting that it is argument rather than pleading. Defendants also object to the narrative tenor of the Argument in which Plaintiff likens Pekin Police Officers to the Gestapo, KGB, and Nazis. Defendants assert that the Argument section is confusing, making it difficult for them to determine which claims are being asserted or supported.

It is well-recognized, however, that documents attached to a complaint are deemed incorporated into it and here, the Argument is part of the complaint itself. *Int'l Mktg., Ltd. v. Archer-Daniels-Midland Co.*, 192 F.3d 724, 729 (7th Cir.1999)). Furthermore, a plaintiff opposing a Rule 12(b)(6) motion "may submit materials outside the pleadings to illustrate the facts the [plaintiff] expects to be able to prove," so long as those "new elaborations" are consistent with the complaint. *Curtis v. Cook County, Illinois*, No. 18-5783, 2019 WL 296555, at

4

*2 (N.D. Ill. Jan. 23, 2019). Here, the Argument section provides additional details which are consistent with the allegations in the body of the amended complaint. The Court does not find the additional facts confusing as Plaintiff specifically states that the facts detailing the allegedly unconstitutional stop are offered in support of Counts I, II, IV, V, VI and VII; while the facts detailing Defendant Butler's alleged excessive use of force are offered in support of Count III. As a result, the Court does not believe Defendants would be disadvantaged by having to respond to the additional facts contained in the Argument.

The Court agrees, however, that the "letter" is not appropriately considered a part of the pleading and will direct the Clerk to strike it. (Doc. 89 at 13). As Plaintiff has another free-standing motion for appointment of counsel (Doc. 87), the Court will not address that issue here.

## LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) challenges whether a complaint sufficiently states a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The Court is to accept all well-pleaded allegations in a complaint as true, and to draw all permissible inferences in plaintiff's favor. *See Bible*, 799 F.3d at 639. A Rule 12(c) motion for judgment on the pleadings is subject to the same standard as a Rule 12(b)(6) motion to dismiss and is to be viewed in the light most favorable to the non-moving party. *National Fidelity Life Ins. Co. v. Karaganis,* 811 F.2d 357, 358 (7th Cir.1987).

To survive a motion to dismiss, the complaint must describe the claim in sufficient detail to put defendants on notice as to the nature of the claim and its bases, and it must plausibly suggest that the plaintiff has a right to relief. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007). A complaint need not allege specific facts, but it may not rest entirely on conclusory statements or empty recitations of the elements of the cause of action. *See Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009). The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## FACTS

In the Argument section of the amended complaint, Plaintiff adds additional facts to support his claims. Plaintiff alleges, in support of all Counts except the Count III excessive force, that on February 9, 2018, he was walking eastbound on Derby Street in Pekin, IL. Defendant Butler was driving eastbound on Derby Street in a police SUV and drove passed Plaintiff. Defendant Butler made a U-turn and parked directly across from Plaintiff, asking if Plaintiff would speak with him. Plaintiff responded "no," and continued walking. Plaintiff asserts that Officer Butler exited his SUV and "aggressively" ordered Plaintiff to stop. When Plaintiff stopped, he was asked "so where [are] all of the drugs?" (Doc. 89 at 8). Plaintiff did not respond and asked whether he was free to go. Defendant Butler told Plaintiff he was detained, asked for his birthdate, and asked Dispatch to run a LEADS check for outstanding warrants. Plaintiff asserts that the detention and seizure was done without probable cause in violation of the Fourth Amendment, Article 1, §6 of the Illinois Constitution, and other unspecified state statute.

In support of the Count IV *Monell* claim, Plaintiff states, in conclusory fashion, that the City has failed to properly train its officers; encourages stops of "this type"; and has instituted a de-facto policy of subjecting citizens to unlawful search and seizure. Plaintiff also alleges, without support, that the city has failed to discipline officers who "behave badly and that these systematic failures have resulted in Defendant Butler's illegal actions and use of excessive force." Plaintiff asserts, without pleading a factual basis, that Defendant Butler violates citizens' rights without fear as the City not only supports such actions, but it also encourages them. (Doc. 89 at 6).

Plaintiff also states that an October 30, 2021, he filed a complaint against Officer Butler and Officer Burris concerning the events of February 9, 2018, despite not naming Officer Burris or having pled any claims against him in the amended complaint. Plaintiff's complaint was determined to be unfounded. Plaintiff asserts that this is evidence that the City supports officers' violations of citizens' rights and evidence that the City conspired to deprive Plaintiff of his rights.

Plaintiff further claims that evidence of Defendant Butler's "guilt" can be found in his police report, the criminal discovery associated with Plaintiff's state law case in Tazewell County case number 18-cf-07, audio recordings of Defendant Butler on February 9, 2018, and in the presentence investigation ("PSI"), prepared by the Federal Probation Office in case 18-cr-10014, which arose from this stop. Plaintiff does not provide the referenced materials with the exception of a few pages from the PSI.

Defendants have provided documentation of Plaintiff's related federal and state criminal proceedings, records of which the Court may take judicial notice. *Parungao v. Cmty. Health Sys.*, 858 F.3d 452, 457 (7th Cir. 2017) ("Courts may take judicial notice of court filings and other matters of public record when the accuracy of those documents reasonably cannot be questioned."). These records reveal that on March 1, 2018, Plaintiff was charged in Tazewell County with unlawful possession of methamphetamine with intent to deliver, armed violence, and unlawful use of a weapon by a felon, as a result of the February 9, 2018 arrest by Defendant Butler. The state court charges were dismissed (Doc. 68-2), when Plaintiff was federally indicted on March 20, 2018, for possession of methamphetamine, being a felon in possession of a firearm, and possession of a firearm in for furtherance of a drug trafficking crime. (Doc. 68-3). On May 23, 2022, Plaintiff pled guilty and was adjudicated guilty on two counts of the

7

indictment; possession of methamphetamine and possession of a firearm in furtherance of a drug trafficking crime. The remaining count was dismissed.

Plaintiff later attempted to withdraw his guilty plea, a request which was denied on December 15, 2022. (Doc. 68-5). On December 20, 2022, Plaintiff was sentenced to 156 months of imprisonment on Counts I and III. Plaintiff filed a Notice of Appeal which was docketed on January 4, 2023 and remains pending.

## ANALYSIS

Defendants generally assert that Plaintiff has added claims in his amended complaint and was "granted no leave to amend except as to Plaintiff's claims regarding illegal seizure/false arrest and *Monell* issues…" (Doc. 92 at 8). Defendant requests that the Court dismiss any claims no pled in the initial complaint. Defendant does not cite caselaw in support and the Court notes that when it granted leave to amend, it did not restrict the scope of the amendment. As a result, Defendants' request that Counts II, V, VI and VII be dismissed on these grounds is denied.

As to Count I, Defendants assert that this should be dismissed for the same reason Count I of the initial complaint was dismissed; the failure to plead a sufficient factual basis for Defendant Butler's alleged lack of probable cause for the detention and search. "Probable cause exists when 'the facts and circumstances within [the officer's] knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed an offense . . .' The probable cause standard requires that the officer's belief be reasonable, not that it be correct." *Huff v. Reichert*, 744 F.3d 99, 1007 (7th Cir. 2014) (internal citations omitted).

While the pleading portion of the complaint might otherwise lack sufficient detail for a probable cause analysis, the Court takes notice of the Argument section where Plaintiff provides

necessary detail. Additionally, while Defendants limit their argument to the issue of probable cause for the arrest, Plaintiff has also asserted that there was no basis for the initial stop, a *Terry v. Ohio*, 392 U.S. 1 (1968) issue. In an investigative *Terry* stop, the officer must be acting on more than a mere "inarticulate hunch,' as evidenced by the officer's ability to articulate a *basis* for the suspicion of criminality in specific facts about the suspect's conduct and its attendant circumstances." *People v. Jenkins*, 193 N.E.3d 722, 733 (Ill. App. Ct. 1st Dist. 2021), *appeal denied,* 187 N.E.3d 728 (Ill. 2022) (citing *Terry*, 392 U.S. at 21-22, 27). Merely, "avoiding an approaching officer does not, on its own, give rise to probable cause or even reasonable suspicion; there must be further indications of potentially illegal behavior. *Id.* at 732 (citing *People v. Bloxton*, 178 N.E.3d 766 (Ill. App. Ct. 1st Dist. 2020). There must be a "reasonable suspicion of criminality—a decidedly lower standard than probable cause—[which] arises when an officer 'observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity *may* be afoot.'" *Id*. at 733.

Here, Plaintiff alleges only that Defendant Butler asked Plaintiff if he would stop and speak with him. When Plaintiff replied "no," Defendant Butler allegedly detained him and asked Dispatch to check for any outstanding warrants. Plaintiff alleges that Defendant Butler detained him before learning of the outstanding warrant, and without a reasonable reason of criminal activity. Here, Plaintiff states a colorable claim that Butler violated his federal and state rights when he detained and searched him. Defendants' Motion to Dismiss as to Count I is DENIED in its entirety.

In Count II, Plaintiff claims that Defendant Butler "unlawfully used the L.E.A.D.S. System to search a private database for electronic records" to determine whether Plaintiff had any outstanding warrants. Defendants assert that this new claim, arising from the February 9,

2018 arrest, is barred by the two-year statute of limitations. *See Woods v. Illinois Dept. of Children and Family Services*, 710 F.3d 762, 766 (7th Cir. 2013) (applying Illinois two-year personal injury statute of limitations applied in § 1983 claims); 735 ILCS 5/13-202. Defendants assert that, under Fed. R. Civ. P. 15(c)(1)(B), these allegations do not relate back to the initial complaint which was timely filed. That is, that the LEADS claim does not arise "out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." (Doc. 92 at 8-9) (citing *Walker v. Porter,* N. 21-1171, 2023 WL 403946, *4 (S.D. Ill. Jan. 25, 2023)).

Defendants do not flesh out this argument and it is recognized that new claims in an amended complaint will relate back of they arise from the "same core of facts, but involve[e] a different substantive legal theory than that advanced in the original pleading." *Batiste v. Dart*, No. 10-3437, 2011 WL 4962945, at *4 (N.D. Ill. Oct. 19, 2011) (quoting *Bularz v. Prudential Ins. Co. of Am.,* 93 F.3d 372, 379 (7th Cir.1996). "A party that adds a new substantive claim to his action need only ensure that "the new claim stems from the same 'conduct, transaction, or occurrence' as was alleged in the original complaint * * * [and] there is no additional requirement that the claim be based on an identical theory of recovery." *See id*. (applying the relation back doctrine where the newly pled claim arose from "the same incident already described in the original complaint.") The Court finds that Plaintiff's newly alleged LEADS claim arose from the same core facts as were pled in his initial complaint. Defendants' Motion to Dismiss Count II is DENIED.

As noted, in Count IV, Plaintiff has pled a *Monell* claim directed against the "Pekin Police Dept.-City of Pekin." Defendants correctly assert that "[i]t is well-established in Illinois that a police department is not a suable entity." *Lalowski v. City of Des Plaines*, 2010 WL

145860, *2 (N.D. Ill. Jan. 8, 2010) (citing *Chan v. Wodnicki*, 123 F.3d 1005, 1007 (7th Cir. 1997) ("The Chicago Police Department was dismissed because it was not a suable entity.")). (Doc. 92 at 10). The Court agrees, and as previously noted, will dismiss the Pekin Police Department as a named Defendant.

Defendants assert that the entirety of the *Monell* claim must be dismissed as Plaintiff pleads only "bald conclusions" to support the existence of an unconstitutional City policy. "To establish a municipality's liability under *Monell*, a plaintiff must show that: '(1) [s]he suffered a deprivation of a federal right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority for the City; which (3) was the proximate cause of his injury.'" *Spearman v. Elizondo*, 230 F. Supp. 3d 888, 893 (N.D. Ill. 2016) (quoting *Ovadal v. City of Madison, Wisconsin*, 416 F.3d 531, 535 (7th Cir. 2005)).

To establish the existence of an official policy, a plaintiff must "allege a pattern or series of incidents that give evidence of the policy; indeed, 'alleging one specific incident in which the plaintiff suffered a deprivation will not suffice.'" *Henderson v. Sheahan*, No. 94-2620, 1995 WL 519704, at *2-3 (N.D. Ill. Aug. 24, 1995) *aff'd,* 134 F.3d 374 (7th Cir. 1997) (citing *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1237 (7th Cir.1986)). There must be sufficient evidence of a true municipal policy, rather than a mere, random event. *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021) (citing *Grieveson v. Anderson*, 538 F.3d. 763, 774 (7th Cir. 2008)).

Plaintiff's claims the City had a widespread custom of harassing citizens and subjecting them to unlawful seizures, largely concern himself. He does, however, plead that his fiancée, Melissa Isaac, was also stopped without probable cause or reasonable suspicion and "for no other

reason than she is connected to me." (Doc. 95 at 21). Plaintiff also asserts that Pekin Police have harassed Ms. Isaac's sister, Plaintiff's mother, and Plaintiff's friend; going to their homes, and demanding to know Plaintiff's whereabouts. Whether or not this is sufficient to establish a policy or custom need not be determined, as Plaintiff fails to plead *municipal* liability, that the City was aware of these incidents and allowed them or, as he claims, outright encouraged them.

As noted in *Spearman*, a plaintiff asserting a *Monell* claim "must show that City policymakers were deliberately indifferent as to [the policy's] known or obvious consequences. . . . 'In other words, they must have been aware of the risk created by the custom or practice and must have failed to take appropriate steps' to address it." *Id*. at 894 (internal citations omitted). There, the Court considered Defendants' motion to dismiss a § 1983 *Monell* claim against the City in which the plaintiff alleged that a search of her apartment violated the Fourth Amendment. Plaintiff pled that she was injured due to a pervasive city custom or practice of honoring a "code of silence" among its officers and failing to supervise and discipline them. In support of the existence of a "code of silence," Plaintiff referred to a statement by the Mayor acknowledging a CPD code of silence; the jury finding of a CPD code of silence in another case; and the statement by an indicted CPD officer "that the practice of stealing from citizens during searches was widespread and also well[-]known and condoned by commanding officers." From this, the court determined that it could "plausibly be inferred . . . that policymakers were aware of wrongdoing by police officers and had a custom or policy of failing to discipline them." *Id*. at 894.

Here, Plaintiff provides no such detail and fails to plead facts to support that the City was aware of the alleged conduct. That is, that a City custom or practice that was the 'moving force' behind the constitutional violation. *Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012). Plaintiff has only asserted that on October 30, 2021, he filed an official complaint

regarding the events of February 9, 2018. (Doc. 89 at 5-6). This, of course, was more than three years after the event and does not establish that the City had prior notice. Municipal liability under *Monell* "requires an action attributable to the organization as a whole," and cannot be predicated on the unconstitutional acts of individual employees. *Williams v. Redman*, No. 20-196, 2021 WL 1907224 (N.D. Ind. May 12, 2021); *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 599 (7th Cir. 2019) ("*Monell* does not subject municipalities to liability for the actions of misfit employees.").

"As the Seventh Circuit has observed, '*Iqbal* makes clear that legal conclusions can provide the framework of a complaint so long as they are supported by factual allegations.'" *Spearman*, 230 F. Supp. 3d at 892 (quoting *Engel v. Buchan*, 710 F.3d 698, 709 (7th Cir. 2013)). Plaintiff fails to plead a colorable *Monell* claim under these facts.

Plaintiff also asserts a Count IV *Monell* claim for failure to train. To successfully plead such a claim, Plaintiff must plausibly suggest that the failure to train "amounted to deliberate indifference to the rights of citizens with whom the untrained employees come into contact." *Manning v. Sweitzer*, 891 F. Supp. 2d 961, 969 (N.D. Ill. 2012). To do so, he must identify "a pattern of similar constitutional violations by untrained employees . . ." *Winchester v. Marketti*, 2012 WL 2076375, *4 (N.D. Ill. June 8, 2012). "This pattern, or recurring string of related unconstitutional conduct, is necessary because it establishes that policymakers know or should have known that their employees' training was deficient." *Id.* This claim, too, fails for the reasons previously stated. Defendants' Motion to Dismiss Count IV is GRANTED, with leave to replead.

Count V of the amended complaint is titled "Pattern and Practice." There, Plaintiff alleges that Pekin Police routinely undertake unlawful searches and seizures. In support, Plaintiff

refers to an incident approximately three weeks prior to the February 9, 2018 incident at issue. At that time, Plaintiff was allegedly unlawfully detained and searched by Defendant Butler, Pekin Officer Burris and an unknown Creve Coeur Police Officer, in response to an Investigative Alert issued by Creve Coeur. Plaintiff does not appear to be asserting an additional, free-standing claim but, rather, offers this to support the Count IV *Monell* claim against the City. If Plaintiff chooses to replead Count IV he is to include these allegations there, rather than asserting them in a redundant claim. Count V is DISMISSED without prejudice.

Count VI of the amended complaint is titled "Deprivation of Rights Under Color of Law." It consists of one scant paragraph where Plaintiff alleges that Defendant Butler was acting under color of law on February 9, 2018, when he allegedly unlawfully detained and searched him. As "acting under color of law" is an element of a §1983 claim, this Count is redundant and unnecessary. Count VI is DISMISSED without prejudice.

Count VII of the amended complaint is titled "Conspiracy of Deprivation of Rights Under Color of Law." This, too, is a brief and conclusory claim that Defendant Butler conspired with other unnamed officers to deprive Plaintiff of his rights against unlawful search and seizure. Defendants move to dismiss this as a new claim filed beyond the statute of limitations; and for failure to adequately plead a conspiracy. As with Count II, the Court finds that this claim arises from the same "core of facts" as pled in the initial complaint and relates back to it. As this new claim may reasonably be found to relate back to the initial complaint, it will not be denied on the basis of the statute of limitations. *See Batiste*, 2011 WL 4962945, at *4.

The Court will next examine the sufficiency of the conspiracy pleadings. "To plead a plausible § 1983 conspiracy claim, it is sufficient to 'indicate the parties, general purpose, and approximate date.'" *Pearson v. City of Peoria*, No. 18-1452, 2020 WL 1816206, at *8 (C.D. Ill.

Apr. 9, 2020) (quoting *Walker v. Thompson*, 288 F.3d 1005, 1007-08 (7th Cir. 2002)). In *Pearson*, the court dismissed the conspiracy claim where Plaintiff had not identified "all the parties to the conspiracy, but instead alleges unknown members of the Department were involved" and had not identified the approximate date of the conspiracy. The court found that the plaintiff had not "come close to stating a facially plausible [conspiracy] claim . . ." *Id.* at *8.

Here, Plaintiff has not identified any of the alleged conspirators, save Butler; and has pled nothing as to the date of the conspiracy. "Vague and conclusory allegations of the existence of a conspiracy are not enough to sustain a plaintiff's burden[;] a complaint must contain factual allegations suggesting the defendants reach a meeting of the minds." *Slaughter v. Rutledge,* 2017 WL 4693966, *2 (C.D. Ill. Oct. 19, 2017) (quoting *Evers v. Reak*, 21 F.Appx 447, 450 (7th Cir. 2001)). Count VII is dismissed without prejudice for failure to state a claim.

## CONCLUSION

1.  For the reasons set forth above, Defendants' Motion to Dismiss (Doc. 92), is GRANTED in part and DENIED in part. It is DENIED as to Counts I and II. It is GRANTED as to Count IV with leave to refile. Counts V and VI are DISMISSED without prejudice as redundant. Count VII is DISMISSED without prejudice for failure to state a claim. Defendants' Motion to Dismiss is DENIED to the extent it requests that the Argument portion of the amended complaint be stricken and GRANTED to the extent it requests that the Letter portion of the Amended Complaint be STRICKEN.

2.  Plaintiff will be given a final opportunity to amend, within 21 days, should he wish to replead Counts IV and VII. If Plaintiff amends his complaint, it is to be titled Second Amended Complaint. Plaintiff must replead all of the Counts which the Court has allowed to go

forward as piecemeal pleadings are not allowed. Plaintiff may not, however, add new allegations or claims other than repleading Counts IV and VII.

3. Defendants will have 14 days from the date of filing of a Second Amended Complaint in which to respond to all Counts, including Count III which was not at issue in this motion. If Plaintiff does not file a Second Amended Complaint with the time allowed, Defendants will have 14 days from that deadline in which to respond to the Amended Complaint.

4. The clerk is directed to terminate the Pekin Police Department as a Defendant and to STRIKE the letter portion of the amended complaint (Doc. 89 at 13).

Signed on this 16th day of May, 2023.

s/James E. Shadid
JAMES E. SHADID
UNITED STATES DISTRICT JUDGE